UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

In re:                                                    Case No.: 22-70382-reg

SAVVA'S RESTAURANT, INC.,
*dba* HARVEST DINER,                                      Chapter 11

                              Debtor.

--------------------------------------------------------x

TD BANK, N.A.,

                         Plaintiff,              Adv. Pro. No.: 22-8040-reg

       -against-

KB INSURANCE CO., LTD. *dba*
KOOKMIN BEST INSURANCE CO., LTD.,
SAVVA'S RESTAURANT, INC. and
SAVVA'S BROTHERS RESTAURANT, INC.,[1]

                       Defendants.

--------------------------------------------------------x

# DECISION

Before the Court are cross-motions for summary judgment in this litigation involving an

insurance claim by the Debtor's pre-petition secured creditor, Plaintiff, TD Bank, N.A. ("TD

Bank"), against the Debtor's insurer, Defendant, KB Insurance Co., Ltd. *dba* Kookmin Best

Insurance Co., Ltd. ("KBIC"), resulting from the total destruction of the Debtor's business, the

Harvest Diner, in a fire. Nearly six months post-fire, KBIC issued a notice rescinding the policy

and denying coverage to both the Debtor and TD Bank. Separately, both the Debtor and TD

Bank sued KBIC for declaratory judgment and other relief to require KBIC to provide coverage

for the loss. In a separate but related decision, this Court held that KBIC's rescission of the

---

[1]      Claims asserted against Harvest Commercial Capital LLC were dismissed without prejudice by
Consent Order, dated March 4, 2021, and the caption was amended to remove Harvest Commercial
Capital LLC. Pl.'s Mot. For Summ. J., ECF No. 23, Ex. 12. Unless otherwise noted, all ECF references in
this Decision are to docket entries in this adversary proceeding. Adv. Proc. No. 22-8040.

policy as to the Debtor was proper and KBIC is not liable to the Debtor for any damages under the policy resulting from the fire. In the instant case, TD Bank seeks coverage from KBIC as loss payee under the policy and argues that it is entitled to recover despite any rescission as to the Debtor. TD Bank also argues that KBIC's denial of coverage to TD Bank was an unjustified bad faith breach of contract and therefore KBIC should be held liable not only for damages under the policy, but also for all damage to TD Bank resulting from the denial of coverage and resulting delays, including but not limited to attorney fees.

Among the many issues presented in this case is one which requires this Court to analyze a particular intersection of bankruptcy and New York state law. KBIC urges this Court to apply New York state foreclosure laws regarding deficiency claims to determine whether TD Bank retained an "insurable interest" in the Debtor's property following the Court-ordered bankruptcy auction sale of the Debtor's property. *See* N.Y. Real Prop. Acts. Law § 1371. KBIC argues that because TD Bank consented to a bankruptcy auction sale under a chapter 11 plan proposed by the Debtor, and then did not seek or obtain a deficiency judgment under state law following the bankruptcy sale, its claim against the Debtor, and thus its insurable interest under the policy, has been extinguished. This argument fails to recognize the role of the bankruptcy proceeding in establishing the viability of TD Bank's claim and the fact that the claim was not fully satisfied by the sale of the Property. The Court finds that where, as here, the property was sold in compliance with terms approved by this Court, TD Bank's post-sale claim against the Debtor is governed by the confirmed chapter 11 plan and a related court-approved stipulation.

For the reasons that follow, summary judgment will enter in favor of TD Bank on the first count of the complaint which seeks a declaratory judgment that TD Bank has a right to payment under the policy. Correspondingly, summary judgment will enter in favor of TD Bank

on KBIC's counterclaim which seeks rescission of the policy as to TD Bank. The Court further finds that genuine disputes exist as to material facts which preclude any determination at this stage of the proceedings as to the exact amount KBIC must pay out to TD Bank under the policy and/or as damages under the remaining causes of action of the complaint. Finally, the Court denies KBIC's motion for summary judgment seeking dismissal of the fourth count of the complaint for bad faith.

### *Facts*

On or about May 3, 2004, the Debtor and an affiliate, Savva's Brothers Restaurant Inc. ("SBRI"),[2] jointly borrowed $2,800,000 from TD Bank's predecessor-in-interest, Commerce Bank N.A., evidenced by a note (the "Loan"), and secured by a mortgage (the "Mortgage") on the Debtor's commercial real property and the improvements thereon located at 841 Old Country Road, Westbury, New York (the "Property"). Pl.'s Mot. For Summ. J., ECF Nos. 23-5, 23-6. The Debtor operated the Harvest Diner at the Property. The Mortgage required the Debtor to maintain fire insurance and name TD Bank as loss payee.

Relevant to the time period at issue here, on or about November 14, 2017, the Debtor applied for insurance coverage with KBIC. KBIC issued a commercial insurance policy to the Debtor, effective as of December 17, 2017, with maximum coverages of $2,049,000 for the building and $300,000 for personal property (the "Policy"). *See* Adv. Proc. No. 22-08041[3], ECF No. 26-4, Ex. A. The Policy was renewed in December 2018 for a one-year term expiring on

---

[2]     SBRI is a New Jersey corporation owned by the Debtor's principal's brother. SBRI is not a debtor before this Court. SBRI is a co-plaintiff, with the Debtor, in this litigation.

[3]     The copy of the Policy attached to the papers in this adversary proceeding is not complete. For this reason, the Court's citation to the Policy is to the related adversary proceeding, the Debtor's action against KBIC. Adv. Proc. No. 22-8041.

December 17, 2019. *Id.*, Ex. B. TD Bank was named as mortgagee, loss payee and additional insured under the Policy. *Id.*, Exs. A, B.

In the meantime, in 2010, a tax lien had been placed on the Property and ultimately sold to a third party in 2011. Also, the Debtor defaulted on the Loan and TD Bank commenced foreclosure proceedings in 2011. Supreme Court, Nassau County, Index No. 2011-016865 ("First Foreclosure"). Facing mortgage and tax lien foreclosures, the Debtor filed a petition under chapter 11 on September 16, 2013 ("First Bankruptcy") (Bankr. E.D.N.Y., Case No. 13-74774). A chapter 11 plan was confirmed on October 13, 2014, which provided for payment of the tax lien, and modified the terms of the Loan so that it would be paid back in 44 monthly installments plus a single lump sum payment for the balance owed at the expiration of 44 months. The Debtor had 45 months to obtain a commitment to refinance the Loan. The plan also provided that the foreclosure judgment obtained by TD Bank in the First Foreclosure would remain open for one-year post-effective date. The final decree was entered, and the First Bankruptcy was closed on February 10, 2015.

When the Debtor failed to pay the balance of the Mortgage at the expiration of the 44 months, TD Bank commenced a second foreclosure action against the Debtor and SBRI in 2018. Supreme Court, Nassau County, Index No. 615613/2018 ("Second Foreclosure").[4] While the Second Foreclosure was pending and while the Policy was in place, the Debtor sought to refinance the Loan. On June 6, 2019, Harvest Commercial Capital LLC ("Harvest Commercial") issued a financing commitment letter to the Debtor. Before the closing on the Harvest

---

[4] The Second Foreclosure was stayed by the filing of the instant chapter 11 proceeding. Prior to the bankruptcy filing, TD Bank had obtained a final judgment in foreclosure. However, the referee's report of amounts due has not yet been confirmed. Pl.'s Mot. For Summ. J., ECF No. 23, Mem. of Law in Supp., at 2.

Commercial loan, the Debtor's insurance broker arranged to change the loss payee (and additional insured) under the Policy from TD Bank to Harvest Commercial. Based on the broker's request, KBIC improperly removed TD Bank from the Policy and added Harvest Commercial in its place, without TD Bank's knowledge or consent.

On September 26, 2019, while Harvest Commercial was the named loss payee despite it not having closed on its loan or advanced any funds to the Debtor, a fire occurred at the Property which resulted in the total destruction of the Harvest Diner. According to TD Bank, on the date of the fire the Debtor owed TD Bank $1,961,633.78 including principal, interest, attorney fees and costs.[5] On October 1, 2019, TD Bank became aware for the first time that it had been removed from the Policy.

Nearly six months post-fire, by letter dated March 13, 2020, KBIC informed TD Bank's counsel that it was rescinding the Debtor's coverage and denying TD Bank's claim due to alleged misrepresentations by the Debtor in the application for insurance.[6] In addition, KBIC claimed that even if the Policy was in effect on the date of the fire, TD Bank is not entitled to coverage based on its status as a mortgagee due to the fact that TD Bank was removed from the

---

[5] According to TD Bank, this number includes principal of $1,714,406.31, plus interest of $194,988.19, plus attorney fees and costs incurred in the foreclosure action of $52,239.28. *See* Pl.'s Mot. For Summ. J, ECF No. 23, Mem. of Law in Supp., at 7-8. This amount is neither conceded nor disputed by KBIC. Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts, ECF No. 24-6, ¶ 33. The Court makes no findings at this time as to the veracity of this figure, only that this is the amount claimed by TD Bank to be owed as of the date of the fire.

[6] The issue of the Debtor's alleged misrepresentations is being litigated in a separate adversary proceeding before this Court. Adv. Proc. No. 22-8041. There, KBIC successfully alleged that the Policy should be rescinded as against the Debtor due to material misrepresentations in the application for insurance.

Policy and Harvest Commercial was placed on the Policy in its stead. *See* Pl.'s Mot. for Summ. J., ECF No. 23, Ex. 22.

While awaiting KBIC's resolution of the insurance claim, and continuing still today, TD Bank incurred additional expenses including attorney fees and costs pursuing the Second Foreclosure, pursuing this insurance litigation against KBIC, and in connection with this bankruptcy case and the ultimate Court-ordered bankruptcy sale of the Property. Pl.'s Suppl. Br., ECF No. 33, at 3. As of March 21, 2023, TD Bank's Allowed Secured Claim in this case totaled $2,707,063.76. *Id.* at 2.

### *Procedural History*

On March 20, 2020, TD Bank initiated this action in New York State Supreme Court in Nassau County against KBIC, the Debtor, SBRI and Harvest Commercial (Supreme Court, Nassau County, Index No. 604396/2020 ("TD Bank Action")) seeking declaratory judgment for a payout under the Policy (First Count). Verified Compl. ("Complaint"), ECF No. 1-2. TD Bank also asserts claims against KBIC for breach of contract (Second Count), reformation (Third Count),[7] bad faith (Fourth Count), estoppel (Fifth Count), and negligence (Sixth Count), for improperly denying its claim under the Policy, and improperly handling the claim. Relevant here, the bad faith claim cites to KBIC's: unreasonable delay in investigating and addressing the claim; failure to conduct a reasonably diligent investigation; denial of coverage without a "reasonably debatable reason"; "reckless disregard" for the fact that it had no valid reason to deny the claim; improper changing of the loss payee from TD Bank to Harvest Commercial;

---

[7] The Third Count, for reformation of the Policy, sought a finding that Harvest Commercial was improperly named as loss payee. Harvest Commercial surrendered any claim to the Policy proceeds and a consent order dismissing the Complaint as against Harvest Commercial was issued on or about March 8, 2021. Pl.'s Mot. For Summ. J., ECF No. 23, Ex. 12.

improper denial of TD Bank's claim based on the Debtor's alleged misrepresentations in the insurance application. *Id.* ¶¶61-65. TD Bank seeks to collect from KBIC under the Policy and under the separate breach of contract and bad faith claims asserted in the Complaint, the entire $2,707,063.76 it is owed by the Debtor—minus the net proceeds of the bankruptcy auction sale of the Property (described below). KBIC filed an answer with crossclaims against both the Debtor and SBRI and a counterclaim against TD Bank for rescission of the Policy. Answer, ECF No. 1-2.

The Debtor also sued KBIC in state court seeking declaratory judgment that KBIC's rescission of the Policy as to the Debtor was improper ("Debtor Action"). *See* Bankr. E.D.N.Y., Adv. Proc. No. 22-8041. Motions and cross-motions for summary judgment had been filed and fully briefed in the state court actions when the Debtor filed the instant chapter 11 proceeding on March 4, 2022. Both state court actions were removed to this Court on or about May 20, 2022. On June 20, 2022, KBIC moved to remand both actions back to state court. ECF No. 13. By Order dated October 11, 2022 the motions to remand were denied without prejudice with the proviso that "in the event that the Adversary Proceedings are not decided by this Court on summary judgment and trial is necessary, then this Court shall revisit KBIC's Remand Motions." ECF No. 22.

TD Bank seeks summary judgment granting it declaratory judgment and compelling KBIC to pay TD Bank benefits under the Policy (First Count); and granting it a judgment for reimbursement of its reasonable attorney fees and costs resulting from KBIC's allegedly unreasonable delay in adjudicating TD Bank's claim and unjustified denial of the claim (Fourth Count). Pl.'s Mot. for Summ. J., ECF No. 23. KBIC opposes TD Bank's motion for summary

judgment and asserts a cross-motion for summary judgment in its favor dismissing TD Bank's cause of action for bad faith (Fourth Count). Def.'s Cross-Mot. for Summ. J., ECF No. 24.

Supplemental briefs were filed (ECF Nos. 25, 26, 30-34) and this Court held a hearing on the motions on March 28, 2023, at which time the matters were taken under submission.

### *The Bankruptcy Auction and Sale*

The Debtor filed this current bankruptcy case with the dual intentions of liquidating the Property and pursuing its insurance claims against KBIC for the benefit of the bankruptcy estate, including TD Bank as its largest secured creditor. Case No. 22-70382, ECF No. 3, ¶38. On September 14, 2022, this Court approved a stipulation entered into between the Debtor and TD Bank regarding TD Bank's secured claim and the sale of the Debtor's Property (the "Stipulation"). Case No. 22-70382, ECF No. 57-4. Pursuant to the Stipulation, TD Bank's Allowed Secured Claim was fixed at $2,512,547.08 as of the date of the bankruptcy filing. Case No. 22-70382, ECF No. 57-4, Stipulation, at 8, ¶6. In addition, TD Bank agreed to pay, as protective advances under the mortgage, all presently due and owing real estate taxes and all other and future real estate taxes that came due through and including the date of the sale, conditioned on this Court's approval and: (a) a grant to TD Bank of an administrative priority for all such payments under § 364(b) of the Bankruptcy Code, and (b) the addition of these advances to TD Bank's Allowed Secured Claim. *Id.* at 8-9, ¶7. TD Bank also agreed to a carve-out from its lien on the Property, and from any payments made to the Debtor or TD Bank from the insurance litigation against KBIC. The carve-out included $75,000 for professional fees and costs awarded to the Debtor's retained professionals, and fees for the office of the United States Trustee ("UST") through and including the time that TD Bank's Allowed Secured Claim is fully paid under the Plan. *Id.* at 10, ¶9. Court approval of this Stipulation was obtained after notice and a

hearing held on September 12, 2022. Case No. 22-70382, ECF Nos. 57, 58, 63. No opposition to the Stipulation was raised by any party, including KBIC which received notice of a hearing to approve the Stipulation.

An auction of the Property, conducted on February 28, 2023 and March 1, 2023, resulted in the sale of the Property to a third party for $1,900,000, after payment of the broker's commission. Broker's Report of Sale, Case No. 22-70382, ECF No. 87. A closing on the sale took place on March 16, 2023. The following deductions will be made from the sale proceeds pursuant to the Stipulation: $75,000 to Debtor's counsel fees; $16,000 for UST fees; an undetermined amount for pro-rated real estate taxes up to the closing date and closing costs. TD Bank expects its total net recovery from the sale to be somewhere between $1,600,000 and $1,768,661.49. Pl.'s Suppl. Br., ECF No. 33, at 2. KBIC did not file opposition to the bankruptcy sale of the Property.

## DISCUSSION

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(a).[8] The Court is not to weigh the evidence; rather the Court must determine whether a genuine issue exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

1. ***First Count of the Complaint: Declaratory judgment that KBIC must pay benefits to TD Bank under the Policy***

   A. ***Rescission of the Policy as to the Debtor does not rescind the Policy as to TD Bank***

---

[8]    Although the motions originally were pending in state court under New York procedural rules, the Federal Rules of Bankruptcy Procedure apply here. *See New York Internet Co., Inc. v. JobDiva Inc (In re New York Internet Co., Inc.)*, Case No. 17-10326 (SHL), Adv. Proc. No. 17-01045 (SHL), 2018 WL 1792235, at *3 (Bankr. S.D.N.Y. Apr. 13, 2018) (finding federal procedural rules apply in a removed action as though the action was originally commenced in federal court).

TD Bank argues that the Debtor's alleged misrepresentations in the insurance application and any rescission of the Policy as to the Debtor do not change TD Bank's rights to coverage as loss payee under the standard mortgage clause. *See e.g.*, *Nat'l Comm. Bank v. Jamestown Mut. Ins. Co.*, 334 N.Y.S.2d 1000, 1001 (Sup. Ct. 1972) (citing *Syracuse Savings Bank v. Yorkshire Ins. Co.*, 301 N.Y. 403 (N.Y. 1950)) (insured's misrepresentation that voided policy as to insured did not impair the mortgagee's rights to coverage). The Court agrees.

The Policy in this case contains a "standard" mortgage clause. Consistent with the standard mortgage clause, one of the loss payable provisions of the policy at paragraph C.2(b)(3) states:

> If we deny [the insured's] claim because of [the insured's] acts or because [the insured has] failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee: (a) Pays any premium due under this Coverage Part at our request if [the insured has] failed to do so; (b) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of [the insured's] failure to do so; and (c) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee. All of the terms of the Coverage Part will then apply directly to the Loss Payee."

Policy, Loss Payable Provisions, ¶ C.2(b)(3). Paragraph C.2(b)(4)(b) of the loss payable clause further provides, *inter alia*, if KBIC denies payment to the Debtor because of the Debtor's acts, "[t]he Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired." Policy, Loss Payable Provisions, ¶ C.2(b)(4)(b). Thus the Policy itself contemplates that TD Bank retains its rights under the Policy despite the Debtor's bad acts.

There is also ample support in relevant caselaw to support the proposition that the standard mortgage clause in an insurance policy creates a separate insurable contract between the insurer and the mortgagee such that a rescission as to the insured does not necessarily result in

denial of coverage to the mortgagee. *See, e.g.*, *U.S v. Com. Union Ins. Cos.*, 821 F.2d 164, 166 (2d Cir. 1987) ("A standard mortgage clause is intended to protect the interests of a mortgagee from any acts or omissions amounting to a default by the insured. . . . Such a clause operates as a separate contract between the mortgagee and the insurer, . . . and gives the mortgagee an insured interest that the insured does not have . . . .") (citations omitted); *Grady v. Utica Mut. Ins. Co.*, 419 N.Y.S.2d 565, 569 (App. Div. 2d Dep't 1979).

KBIC argues that the New York Court of Appeals in *Admiral Ins. Co. v. Joy Contractors, Inc.*, 19 N.Y.2d 448 (N.Y. 2012), called this rule into question when it considered the impact rescission of a policy should have on additional insureds, particularly where the misrepresentations made by the insured hindered the insurer's ability to ascertain the nature of the risk properly.

The Court is unpersuaded that *Joy Contractors*, a case which involved additional insureds and not a loss payee under a standard mortgage clause, commands that coverage to TD Bank as a loss payee should be denied. *See Joy Contractors*, 19 N.Y.3d at 461 (denying coverage to addition insured because "[i]n short, 'additional' insureds, by definition, must exist in addition to something; namely the named insureds in a valid existing policy"). Absent clear and binding authority extending the *Joy Contractors* holding to cases involving loss payees under a standard mortgage clause, this Court declines to do so. Here, the clear weight of authority supports a finding that TD Bank holds a separate insurable interest in the Debtor's property, not dependent upon continued coverage to the Debtor. The Court finds, based on the caselaw and the terms of

the Policy, cited above, that the rescission of the Policy as against the Debtor did not also rescind TD Bank's rights to coverage.[9]

### B. The bankruptcy sale of the Property did not cancel TD Bank's right to recovery under the Policy

The Loss Payable Clause of the Policy provides that: "[f]or Covered Property in which both [the Debtor] and [TD Bank] . . . have an insurable interest, . . . [KBIC] will: (a) Adjust losses with [TD Bank]; and (b) Pay any claim for loss or damage jointly to [the Debtor] and [TD Bank], as interests may appear." Policy, Loss Payable Provisions, ¶ C.1.

KBIC argues that TD Bank only has an insurable interest in the Property to the extent there is a remaining debt owed to it. ECF No. 30, at 3-4. KBIC cites cases which provide that, in the state court foreclosure context, extinguishment of the debt prior to or subsequent to the loss will preclude recovery by the mortgagee under an insurance policy. *See Moke Realty Corp. v. Whitestone Sav. & Loan Ass'n*, 370 N.Y.S.2d 377, 381 (Sup. Ct. 1975), *aff'd* 382 N.Y.S.2d 289 (App. Div. 2d Dep't 1976), *aff'd* 363 N.E.2d 587 (N.Y. 1977) (finding mortgagee's interest in standard mortgagee clause is co-extensive with the debt owed to it, and dismissing mortgagee's claim against insurer because the debt was deemed satisfied due to mortgagee's failure to obtain a deficiency judgment after foreclosure pursuant to N.Y. Real Prop. Acts. § 1371); *see also Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 28 N.Y.2d 332, 336 (N.Y. 1971) (finding

---

[9] KBIC posits in a footnote that "[i]t is unclear whether a New York court would find that consider [sic] the Bank's knowledge of the circumstances of the misrepresentation – i.e., the existence of the bankruptcy and tax lien – against the Bank. Other jurisdictions have found that there may be circumstances where a mortgagee will not be entitled to collect on a policy." Def.'s Cross Mot. For Summ. J., ECF No. 24, Mem. in Supp., at 18 n.6 (citations omitted). However, KBIC has not alleged or proven that TD Bank in fact had knowledge of the Debtor's misrepresentations and the Court need not consider it now. At most, this argument might be appropriate to consider in analyzing whether KBIC had a good faith basis upon which to deny coverage to TD Bank. *See* discussion *infra*.

mortgagee's debt was satisfied and mortgagee's insurable interest was satisfied by mortgagee's bidding the full amount of the debt at foreclosure). KBIC argues that because the Property was sold by the Debtor with TD Bank's consent in a bankruptcy sale for less than the amount of the TD Bank debt, and TD Bank failed to obtain a deficiency judgment against the Debtor, TD Bank no longer has an insurable interest in the Property because under these facts the proceeds of the sale are deemed to be full satisfaction of the mortgage debt. In reply, TD Bank argues that the state court foreclosure deficiency laws cited to by KBIC have no application in this case which is governed by a confirmed chapter 11 plan and the court-ordered Stipulation between the Debtor and TD Bank. The Court agrees that state court foreclosure and deficiency rules have no application in the context of a sale conducted under the auspices of a confirmed chapter 11 plan and court-ordered Stipulation setting the rights and obligations of the parties. The Court will now examine the status of TD Bank's claim against the Debtor in the context of this chapter 11 case.

Pursuant to the Court-approved Stipulation entered into between the Debtor and TD Bank, TD Bank's "Allowed Secured Claim" was agreed to be $2,512,547.08. Case No. 22-70382, ECF No. 57-4.  This is consistent with the secured proof of claim filed by TD Bank in this case. *See* Claim No. 9, Claims Register. Pursuant to the Stipulation, TD Bank's Allowed Secured Claim would be "automatically extinguished and satisfied as and when" it is "paid pursuant to Section 6.1 of the Plan." Case No. 22-70382, ECF No. 57-4. Section 6.1 of the Plan requires TD Bank to issue a satisfaction of mortgage only upon payment of TD Bank's Allowed Secured Claim in full. TD Bank's Allowed Secured Claim has not been paid in full. To date, TD Bank's Allowed Secured Claim totals over $2.7 million, and the Property was sold for far less than that amount. TD Bank's claim will not be extinguished until it receives payment in full of its Allowed Secured Claim from the sales proceeds and any insurance payout, which payout has

yet to be determined. As such, TD Bank still has an insurable interest as that term is contemplated in the Policy and retains the right to seek benefits from KBIC under the loss payable provisions of the Policy. *Cf. Builders Affiliates, Inc. v. N. River Ins. Co.,* 459 N.Y.S.2d 41, 43 (App. Div. 1st Dep't 1983) ("That the mortgagee should retain an insurable interest, notwithstanding foreclosure and sale of the property, as long as some portion of the debt remains outstanding, is consistent with the provision in subdivision 4 of section 254 of the Real Property Law that the fire policies insuring the property shall be held by the mortgagee or his representatives 'as a collateral and further security' for the payment of the mortgage debt.") (citing *Fields v. W. Millers Mut. Fire Ins. Co.*, 48 N.E.2d 489 (N.Y. 1943); *Morgan v. Ellenville Sav. Bank*, 389 N.Y.S.2d 660 (App. Div. 3d Dep't 1976)). The Court rejects KBIC's argument that TD Bank has not retained an insurable interest and a right to benefits under the Policy. Exactly what those benefits are is in dispute.

### C. TD Bank's recovery rights under the Policy

TD Bank argues it is entitled to recover under the Policy, (i) the amount of its lien on the date of the fire, plus (ii) post-loss disbursements. Pl.'s Mot. For Summ. J., ECF No. 23-2, at 13. KBIC argues that its exposure to TD Bank under the Policy, if any, is limited to the actual cash value of the damage to the Property. Def.'s Suppl. Mem. of Law, ECF No. 34, at 3. KBIC points out that the loss payable provision cited to by TD Bank allows KBIC, in the event of payment to TD Bank under the Policy, *at its option* to pay TD Bank the balance of the mortgage and step into the shoes of the mortgagee; however, that provision does not require KBIC to pay TD Bank the balance of the mortgage.[10]

---

[10]       The relevant portion of the loss payable provisions states as follows:

The Court finds that KBIC is liable to TD Bank under the Policy, up to the Policy limits, for the actual cash value of the damage caused by the fire up to the amount of TD Bank's lien on the date of the fire. The Policy states initially that it provides coverage for "replacement cost." *See* Policy, Supplemental Declarations (marking that this is a "replacement cost" policy); Building and Personal Property Coverage Form ("Coverage Provisions"), ¶G(3)(a) ("If shown as applicable in the Declarations. . . (3)(a) "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form."). However, the Policy also states that replacement cost coverage does not apply for "any loss or damage: (1) [u]ntil the lost or damaged property is actually repaired or replaced . . ." Policy, Coverage Provisions, ¶G(3)(d)(1). In this case, where the Property was not repaired or replaced, the Policy coverage would revert to actual cash value coverage. *See* Policy, Coverage Provisions, ¶E(7)(a).

The Court further finds that regardless of the actual cash value of the damage to the Property, KBIC's liability to TD Bank under the Policy may not exceed the amount of TD Bank's lien on the date of the fire, which is alleged by TD Bank to be $1,961,633.78. The Court finds support for this holding in the case of *Grady v. Utica Mut. Ins. Inc.*, 419 N.Y.S.2d 565 (App. Div. 2d Dep't 1979). In *Grady*, the New York Appellate Division found that in the case of a standard mortgage clause in a fire insurance policy which insured the mortgagee "as interest

---

(4) If we pay the Loss Payee for any loss or damage and deny payment to you [the Debtor] because of your acts or because you have failed to comply with the terms of this Coverage Part:
(a) The Loss Payee's rights will be transferred to us [KBIC] to the extent of the amount we pay; and
(b) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.
*At our option*, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us. (emphasis added).

Policy, Loss Payable Provisions, ¶ C(4).

may appear" the mortgagee had the right to be paid the full amount of its pre-fire foreclosure judgment including costs fees and protective advances "as it existed on the date of the fire." *Id.* at 569. The Appellate Division held that "the standard mortgagee clause 'accomplishes an insurance of the property and not of the debt, and the only importance of the debt is that it gives the mortgagee an insurable interest in the property.'" *Id.* (citation omitted). The Appellate Division remanded the case on the issue of calculation of damages because the policy only obligated the insurer to pay the mortgagee the amount of the loss up to the value of its interest on the date of the fire. *Id.* at 572. The court stated: "If the damage to the premises exceeded the value of plaintiff's lien, Utica Mutual should be directed to make payment in the amount of the lien together with applicable interest thereon. If, on the other hand, the value of plaintiff's lien exceeded the damage, the insurer should be directed to pay plaintiff only the amount of the loss and he may then seek to recover the balance of his lien by foreclosing against the damaged premises." *Id.* This is consistent with the terms of the Policy which insured against loss to the Property and was not a mortgage insurance policy.

This leaves the Court with a disputed issue of fact: What was the actual cash value of the damage to the Property? According to TD Bank, KBIC has already determined that the actual cash value of the loss to the building was $1,475,554. Pl.'s Suppl. Br., ECF No. 33, at 9 (citing Closing Report by Long Island Adjustment Corp. (KBIC01568-70), ECF No. 25-2). Add to that the assumed $300,000 in damage to Debtor's personal property located at the Property, and according to TD Bank the total "actual cash value" of the damage should be $1,775,554. KBIC does not concede that the actual cash value of the damage has already been determined. Rather, it argues that the factual record in this case is insufficient to establish the actual cash value of the damage to the Property. The Policy states that if the parties disagree on the value of the loss,

either party may make a written demand for an appraisal of the loss. *See* Policy, Coverage Provisions, ¶E(a). In fact, TD Bank has suggested that "[t]o the extent a more precise calculation is deemed required, appraisals can be easily arranged. For example, the Bank and KBIC could each retain their own appraisers and this Court determine the precise amount owed, either on the papers or after an inquest." Pl.'s Suppl. Br., ECF No. 33, at 9.

Therefore, the amount KBIC must pay out to TD Bank for the actual cash value of the damage to the Property is an issue of fact which remains to be decided and is not ripe for summary judgment.

**2.      *Second and Fourth Counts of the Complaint: Breach of Contract and Bad Faith[11]***

In addition to benefits it seeks under the Policy, TD Bank seeks consequential damages, including but not limited to attorney fees resulting from KBIC's alleged breach of the Policy. Specifically, the consequential damages sought by TD Bank include: "the protective advances made by TD Bank to protect the property . . . plus the carve out costs associated with the auction sale, plus TD Bank's attorneys' fees and costs incurred in connection with the state court foreclosure action, the state court coverage action against KBIC, and this bankruptcy case and adversary proceeding." Pl.'s Suppl. Br., ECF No. 33, at 3; *see also* Transcript of March 28, 2023 Hearing at 46. TD Bank also seeks to recover attorney fees resulting from KBIC's alleged bad faith handling of TD Bank's claim. *See Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127 (N.Y. 2008) (consequential damages); *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co.*,

---

[11]      Although the breach of contract claim is not specifically mentioned in the motion for summary judgment, it is necessarily implicated by TD Bank's request for consequential damages and the caselaw cited by TD Bank in support thereof.

92 N.Y.S.3d 231 (App. Div. 1st Dep't 2019) (same); *New England Mut. Life Ins. v. Johnson*, 589 N.Y.S.2d 736 (Sup. Ct. 1992) (attorney fees for bad faith claim handling). TD Bank argues that it was unreasonable and a bad faith breach of the Policy for KBIC to delay resolution of the claim and ultimately deny coverage to TD Bank based on a rescission as against the Debtor and based on KBIC's wrongful removal of TD Bank as loss payee.

KBIC contends that TD Bank's separate claim for bad faith must be dismissed because there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy. KBIC cites to a line of New York cases that provide "an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (N.Y. 1995). Regarding consequential damages, KBIC distinguishes the *Bi-Econ. Mkt.* case, on which TD Bank relies, on the basis that that case involved business interruption insurance which is not implicated here. In any event, KBIC argues that the consequential damages alleged by TD Bank were not foreseeable consequences of KBIC's actions.

### A.  *Breach of contract and consequential damages*

A claim for consequential damages may be asserted for breach of an insurance contract as long as the damages were "within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting." *Kenford Co. v. County of Erie*, 537 N.E.2d 176, 178 (N.Y. 1989) (citations omitted). "It is not necessary for the breaching party to have foreseen the breach itself or the particular way the loss occurred, rather, '[i]t is only necessary that loss from a breach is foreseeable and probable.'" *Bi-Econ. Mkt.*, 886 N.E.2d at 130. In *Panasia Ests., Inc. v. Hudson Ins. Co.*, 886 N.E.2d 135, 137 (N.Y. 2008), the New York Court of Appeals held that summary judgment on the issue of consequential damages was inappropriate where the

record was not fully developed as to whether the damages to the insured were foreseeable to the insurer.

TD Bank argues that the consequential damages resulting from KBIC's untimely and improper denial of TD Bank's insurance claim, which damages include real estate taxes, attorney fees, and the carveouts from the auction and sale of the Property, were foreseeable consequences of KBIC's breach. Pl.'s Suppl. Br., ECF No. 33, at 12-13. KBIC argues that it was not aware of the pending foreclosure action, the tax lien, or the Debtor's First Bankruptcy, and could not have foreseen the events that unfolded in this case when it issued the Policy to the Debtor. Def.'s Suppl. Mem. of Law, ECF No. 31, at 15. The Court will not resolve TD Bank's claim for consequential damages for breach of contract as a matter of law because the Court finds that there are genuine disputes as to material facts, including whether the alleged damages TD Bank is seeking to recover from KBIC were foreseeable and probable and within the contemplation of the parties at the time of or prior to contracting.[12]

### B. Bad faith and attorney fees

KBIC argues that the Fourth Count of the Complaint must be dismissed because there is no cognizable claim under New York law for bad faith denial of an insurance claim. Although it is generally stated that a separate tort claim for bad faith does not exist under state law, *see Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 406 (App. Div. 2d Dep't 2005), the Court finds that the bad faith claims asserted here are adjunct to TD Bank's claim for breach of

---

[12]    Although whether and the extent to which TD Bank is entitled to recover post-loss fees and disbursements as consequential damages remains an issue to be decided, the Court finds that in no event should KBIC be liable for amounts TD Bank voluntarily gave up in order to accomplish the sale in bankruptcy, i.e., the carveout from its secured lien agreed to by TD Bank to pay professional and UST fees.

contract and not expressly prohibited under New York caselaw. *See Bi-Econ. Mkt.*, 886 N.E.2d at 132 (complaint alleged cause of action for bad faith claims handling which could form the basis for consequential damages against insurer); *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co.*, 92 N.Y.S.3d at 234 ("[A] claim for breach of contract and one for bad faith handling of an insurance claim are not necessarily duplicative."). TD Bank's bad faith claim will not be dismissed.

TD Bank asks this Court to make a bad faith finding as a matter of law and award it attorney fees as a result. As a general rule, attorney fees may not be awarded to the prevailing party unless authorized by agreement of the parties, by statute, or court rule. *See Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979). In the insurance context, in New York, attorney fees may under appropriate circumstances be awarded to the insured "but only when [it] has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from the policy obligations[.]" *Id.* (citations omitted). The reasoning behind this exception to the general rule is that, where an insurer has a duty to defend the insured, that duty "extends to any action arising out of a covered event, including an action brought by the insurer to free itself from covering the event." *Liberty Surplus v. Segal Co.*, 420 F.3d 65, 68-69 (2d Cir. 2005).

There is another exception to the general rule against awarding attorney fees in the insurance context which would hold the insurer liable for the attorney fees of the insured where there was "more than an arguable difference of opinion between the carrier and insured over coverage. . . [which would] require a showing of such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup v. State*, 227 N.E.2d 842, 844 (N.Y. 1967). There is a strong presumption against finding bad faith on the part of the insurer. *See Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624 (2d Cir. 2001)

(citing *Sukup*, 227 N.E.2d at 844). In determining whether there has been a bad faith denial of insurance coverage, "courts will consider the facts and circumstances surrounding the case, including whether liability is clear, whether the potential damages far exceed the insurance coverage and 'any other evidence which tends to establish or negate the insurer's bad faith in refusing to settle.'" *Redcross v. Aetna Cas. & Sur. Co.*, 688 N.Y.S.2d 817, 820 (App. Div. 3d Dep't 1999) (quoting *Pavia v. State Farm Mut. Auto. Ins. Co.*, 626 N.E.2d 24, 28 (1993)).

The Court finds that genuine issues of material fact remain as to whether KBIC's conduct in investigating and ultimately denying TD Bank's claim for loss from the fire was such that "no reasonable carrier would, under the given facts, be expected to assert it." *Sukup*, 227 N.E.2d at 844. "Bad faith claims generally raise fact issues preventing a determination of summary judgment." *Hell Yeah Cycles v. Ohio Sec. Ins. Co.,* 16 F. Supp. 3d 1224, 1235 (E.D. Wash. 2014) (finding that where reasonable minds could differ on the issue of bad faith summary judgment is not appropriate); *see also Cont'l Cas. Co. v. Stradford*, 11 N.Y.3d 443, 450-51 (N.Y. 2008) (finding summary judgment was not appropriate where there was a question of whether an insurer's disclaimer was timely).

## CONCLUSION

Summary judgment will enter in favor of TD Bank on the First Count of the Complaint which seeks a declaratory judgment that TD Bank has a right to payment under the Policy. Correspondingly, KBIC's counterclaim seeking rescission of the Policy as to TD Bank is denied. Summary judgment as to all other matters is denied, and this matter will be restored to the Court's calendar for resolution of the remaining issues in this case, including a determination of the exact amount KBIC must pay out to TD Bank under the Policy and/or as damages under the remaining causes of action of the Complaint.

TD Bank is directed to draft a proposed order resolving the motion and cross-motion consistent with this Decision and settle the proposed order on notice to KBIC and the Debtor pursuant to E.D.N.Y. LBR 9072-1(a). This matter is restored to this Court's calendar for a pre-trial conference on October 23, 2023 at 9:30am.

Dated: Central Islip, New York
September 21, 2023



Robert E. Grossman
United States Bankruptcy Judge